The next matter, number 23-1003, Caitlin Corrigan v. Boston University. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. My name is Rob Meltzer from the Mountain States Law Group. For the appellant, who is here in the courtroom as well, we have two minutes for rebuttal at the end. You may. Please proceed. Thank you. This is a matter that was filed in the U.S. District Court by Kay Corrigan. She was and is a graduate student at Boston University School of Theology. She was suspended from Boston University in 2021 for her inability to comply with Boston University's testing requirement for SARS-CoV-19. She, to this day, contains to have the status of a Boston University student in suspension for her inability to comply with Boston University's policies and their failure to provide reasonable accommodation under the ADA. There are two issues that I wish to really stress here, because I think the brief otherwise speaks for itself. The first is that this is not some moot point because Ms. Corrigan does remain an active student in suspension. This is unlike Harris v. UMass Lowell, where students have transferred out or graduated or were drawn from school. Excuse me. When you say that she remains an active student, I understand that the university has said that she's free to resume class now that the COVID restriction, the requirement for vaccination has been lifted and she simply hasn't done it. That's the record the way I read it. If I may, it's actually it's out of testing, not the vaccine. But the point is that, in fact, there is nothing in the record, nothing in the record down below, nothing in the record on this appeal that in fact that the testing protocol has terminated. This is something that crept into this case during the court's underlying hearing. This comes from a document, A73 to the appendix, where they altered and amended what the testing protocol was going to be. But they do specifically state in that document that the testing is continuing. So when you look at the decision by the underlying court. But it's not it's not testing is continuing, but it's not mandatory. There's no no. Are you saying that the record supports a finding that there is still a mandatory testing regime at BU? Yes, I do. And in fact, if you look at the actual document that was provided, which is A73, they do state after they say that they are going to be eliminating the quote unquote mandatory test for all people. They say testing for BU community members with symptoms or have been in close contact with infected people will continue. So at the same time that the documents. That's not a mandatory. That's not a mandatory regime. They're saying they're saying everyone doesn't have to get the test anymore. But people who are symptomatic or who have shown indications that they may have the virus still have to get the test. That's far different than a mandatory testing regime. And you are you and I are on the same page, which is why I brought this appeal, because this case was dismissed under Rule 12B-6. And what we are discussing here is we're now debating the meaning of a document, A73. What does that document mean under 12B-6? This is outside the record. This was weighing of evidence by the U.S. District Court. The U.S. District Court made a determination on a 12B-6 motion as to what that statement meant. Our position has always been she's a live student under suspension and that this document says testing will continue. That's for discovery, maybe for summary judgment. Wait, why is that for discovery? In other words, on a 12B-6 motion, the district court is free to interpret, make reasonable interpretations of any documents submitted by the parties next to the complaint. For example, which are within the proper scope of 12B-6. Yes. And I don't see, I don't understand what you're saying. Are you saying that that document was before the court and that the court had no right to interpret it the way it did? What we are talking about is that she weighed the meaning of it and based the entire decision based upon the fact that there was, that this had been terminated. She did not deal with the fact that, in fact, a student who is in contact, that the testing would continue. The word is will continue. And so what you have is a issue of discovery of whether that program would actually occur. On 12B-6, this was put in as part of the motion. Wait a minute. The issue isn't what the testing necessarily continued. The question is whether the mandatory testing is a bar to the plaintiff resuming her studies. It's not just because you have a document that says that people who are still symptomatic are going to continue to be tested. That doesn't mean that everyone is fine or even people who have been suspended before are fine. I don't understand how you read that document. I read that document as being outside of 12B-6 in the four corners of the complaint, not provided by, submitted by any kind of affidavit or supporting documentation. We're speculating, as I believe the trial court did, as to what that means. What we do know is that they told my client that if she could not comply with these provisions, which we say is not reasonable accommodation, that her suspension would continue. It's an active case because there's nothing in the record that indicates that what is specified in A-73 ever terminated. So the trial court on 12B-6. Well, you brought this newsletter to the attention of the court. Isn't that correct? This was brought. There was a motion for reconsideration because we objected specifically in the court's decision. She quoted the language she said, with the termination of the program. And we brought a reconsideration raising exactly these points. We believe it was an error for denying the reconsideration. That document needs to be interpreted. It needs to be verified. It was nothing. And yet this entire series of appeals has come down to the fact that this is moot. It's not moot. But you're bringing this to the attention of the court and want the court to rely on it as proof that the mandatory testing has not been terminated. So you're saying you want the court to consider it for some purposes but not for others? No, if I may, I'm actually stating that this should not be considered by anyone. It was not verified. It's undefined. It's not part of the four corners of the complaint. So you were wrong to bring it to the court's attention in rebuttal. It was brought to the court's attention by Boston University in their motion to dismiss. That document was something that we objected to being used to be reviewed at all for those reasons. So we have a document that went in and served the basis of dismissal of a live controversy that can still be resolved in my client's favor. She still wishes to return, but this document was relied on. She essentially took the defendant's defense of what this case should have been, and she adopted their version of the event. Under 12b-6, a court cannot do that. This document should not have been allowed to be introduced on a motion to dismiss. We contend that there's nothing in the record that ever corrects the fact that it's in the record and, in fact, that we don't know what it is. It's not verified, but it led to my client's case being dismissed. She's been seriously harmed. She spent three years fighting for the ability to get back based upon the fact that the trial court interpreted that document in a certain way. And why do you say that it's improper for a defendant to attach it on a motion to dismiss? Our case law is replete with cases which say that on a motion to dismiss, you can consider the allegations of the complaint, any documents attached to the complaint, and any documents that necessarily are referred to therein or thereon. That's the colonial mortgage case and a whole line of other cases. However, the limitation under that, which we all cited in our motion for reconsideration, comes from Goldman v. Belden, which says the court's function on a motion to dismiss under 12b-6 is, quote, not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient. There's no weighing of the evidence. All the court did was interpret a document that's properly before it. That's what courts do, interpret documents. There's no weighing of the evidence, is there? This isn't a question of the court made a determination that she still suffers from COVID or something like that. It is a question of fact, whether or not this was terminated. So what the court did was essentially grant a Rule 56C judgment against my client because she took a document introduced in a motion to dismiss and interpreted it as terminating the program, whereas we know for a fact it did not. That is a discovery question, and as I said, it may come up on summary judgment. But under 12b-6, that is weighing the evidence. That is taking one party's... The regime before was everybody had to be tested. Looking at the document and the document says what it says, that's no longer the case. However, they're still saying testing will continue. So, again, we're debating the meaning, and that's the concern we have. My client did not... It's not unclear. It says these are the two conditions preceding to requiring testing. And the problem you have is testing will continue, and they did not allow reasonable accommodation of alternative testing. And so when you have will testing, you have the concern that unless she consents to testing, she is not allowed to return to her school. That's why it's a live controversy. The elements that we've raised in our actual complaint, our prayers for relief, page 20 on the appendix, those standards still have to be met by an order that she is entitled to accommodation under the Americans with Disabilities Act. What this does is they continually said to her, unless you agree... Now, she didn't say that she would not be tested. There are alternative tests to what they were compelling. They declined to allow an alternative. And, in fact, we do know, as a matter of fact, because we do have the whistleblower e-mail that was part of this record that came into Children's Health Defense, that they were, in fact, giving certain people accommodation, who apparently were insiders outside Boston University, but not to my client. So you have this issue of the fact they would not allow an accommodation, but they said testing will continue, and she was not able to return. Under 12b-6, that document should not have been weighed by the underlying court to determine, in fact, the termination of the program had occurred. It hadn't occurred. That's why she's not in school. It's been three years. She's trying to get back to this. She needs this court to remand this for discovery so we can get the orders we need so that she can return to school under conditions in which she can study. Counsel, what you're asking is that you need an order so that when she ever goes to BU, she does not get tested, correct? No, we're not asking that. The issue is not that she'd not be tested. The accommodation was they refused to allow any other form other than a standard to which her doctor said she could not, you know, take that particular test. What Boston University declined to do, and this is full of this in the record, they declined to have a chance, an opportunity to talk to us about it, to try to find a reasonable solution. She was simply suspended. By the way, that's retaliation under the ADA to suspend somebody from school because they made an ADA claim. That is not permitted either. Boston University's conduct has been abhorrent here. All we're asking is to have this remanded because under 12b-6, you cannot allow a case this important that impacts somebody's future to this extent to have her lose this opportunity at the School of Theology because the trial court weighed what that document meant. It's just not appropriate. Thank you. You have two minutes for rebuttal, sir.  Please introduce yourself on the record to begin, sir. If it may please the Court, my name is Thomas Elcock. I represent the appellee, Boston University. First and foremost, the Court should understand this case was not dismissed under Rule 12b-6, Grounds. I refer to the Court to Appendix Page 66, which is Judge Casper's Memorandum of Decision, Footnote 1, where she says because the Court grants BU's 12b motion to dismiss on mootness grounds, it does not reach BU's related argument under Rule 12b-6. The entire premise of my brother's argument is incorrect. This was a 12b-1 dismissal. Under Rule 12b-1, it was completely appropriate for Judge Casper to look at evidence outside the complaint to determine whether or not there was a live controversy and whether this case was moot. It really bothers me greatly that there's a lack of candor to the Court where my brother completely misrepresents the record and the basis for the decision in all three of his appellate arguments. This was a 12b-1 dismissal. 12b-6 was not decided, and it was completely appropriate for Judge Casper to rely on the exhibits Boston University submitted in support of its 12b-1 motion. And our standard of review right now would be de novo, correct? Yes. As to any factual issues, though, the Court, it would be a clearly erroneous standard of review with respect to any factual findings Judge Casper made with respect to the record evidence as to whether or not the mandatory testing program had ceased at BU. BU submitted four documents in support of its motion to dismiss under Rule 12b-1. Only the third document is reproduced in the appendix. The other documents are on the docket. Docket entry number 12 exhibits 1, 2, 3, and 4. My brother points to exhibit 3 only to make this claim that the mandatory testing continues or that's a live issue. That's completely untrue. If you look at exhibit 1 and exhibit 2, which are the communications from the university, they clearly say that the mandatory testing will end as of March 23rd. Exhibit number 3 that my brother looks to on page 73 of the appendix is the third document, and it's a news report from BU Today. It's a story reporting on exhibits 1 and 2. And if you look at the title of the document itself, it says, University to end systematic asymptomatic COVID testing. Lab will continue to process specimens for those who have symptoms. What BU did unequivocally was to stop all mandatory testing. And what the document at page appendix 73 simply says is that testing will remain available for those with close contact or who have symptoms. The word mandatory does not appear in exhibit 3, appendix page 73. It's a complete misreading of the document. There is no factual dispute that mandatory testing at Boston University ended as of March 23rd, 2022. Finally, there is no factual dispute that the plaintiff is still a current student. She's not enrolled in the university and hasn't been since the first semester of 2022. She was suspended and invited to return at the end of that semester. She did not return. She was suspended as of December 31st, 2021. And she could ask for permission to re-enroll at the university for the second semester, the spring semester of 2022. She did not do that. She hasn't been at the university for over three years. There is absolutely no argument made below to Judge Casper, nor in the appellant's appellate brief to this court, that she's a current student. Just as a matter of record, because she did not request to return, does that mean, from BU's perspective, that she couldn't return if she asked to return now? If you look at appendix page 30, it's the October 14th letter indicating that she's been suspended. She's suspended per the letter to December 31st, 2021. It says that she could return for the spring semester of 2022. And in that letter, the university specifically requested notification by November 15th, 2021, if she wished to return for the spring semester. But what does it mean if she didn't do that? She's not a current student. She was a graduate student on a full tuition scholarship. That scholarship was held open for her for that second semester. That scholarship has now since been reassigned or reapplied. And some other student has that scholarship. So if she wanted to go back to BU now, she would have to reapply? Yes, Your Honor. But there is no barrier to her reapplication. The fact that she's not COVID, that she won't submit to a mandatory COVID test, is no longer a bar to her reapplication. That's right, Your Honor. That's why this case is moot, because the mandatory testing that the plaintiff objected to went away in March of 2022. It has never been reinstated. There is no requirement for any faculty, staff, or student at BU, which is a community of more than 40,000 people, to undergo any mandatory COVID testing. So just to get just a little bit more granular, her objection was not to testing, but to nasal testing. So the requirement that there be testing if there's symptoms or exposure, once again, is BU's position that it has to be nasal if there is that kind of exposure? No, it's BU's position that there is no requirement for any testing. Even under these two conditions? Yes, and what Appendix Page 73 simply says in that news report is that BU would make testing still available. So when BU did away with the mandatory testing, they said to their students, the faculty, and staff, if you have a close contact or if you're symptomatic, you may get tested. There was no requirement that anyone be tested any longer after March 31, 2022, to have that testing even done at BU as opposed to a private health care facility. So my brother is grasping at straws, pointing out Exhibit 3, which is really informed by Exhibits 1 and 2, which are the actual communications from the deans at BU and its medical director, and he's harping on a news report describing Exhibits 1 and 2 that were filed in support of the motion to dismiss, which was granted under Rule 12b-1. Counsel, let me ask you, in Appellant's brief, there's discussion of the capable of repetition yet evading review doctrine. Why is it inapplicable here? Well, all of the other COVID cases that have been decided have rejected that a COVID mandate, vaccine mandate, or testing requirement meets that definition. That would be the Harris v. University of Massachusetts Lowell case, the Calvary-Chapel-Banger v. Mills case, and the Boston Bit Labs case. Given the progress in the pandemic, the vaccinations which are now prevalent, as well as the experience we've all had since the pandemic started and the state of what was happening in March of 2022 when the mandatory testing was stopped, Judge Casper reasonably found on the record submitted to her that this was not something that was likely to be renewed or reinstated in view of all of the progress with respect to the knowledge we have about the pandemic. It's treatment and its course. So that was an appropriate factual inference that she made based upon the exhibits that were provided to her. I think that if that was the rule, that there's this hypothetical possibility that someday, in different circumstances, BU could reinstate mandatory testing, it would be an exception that would swallow the rule of mootness. Because every case, theoretically, could be capable of some type of repetition. Here, there was no reasonable expectation, as found by Judge Casper, that if Ms. Corrigan re-enrolled at Boston University, that she would be subject to the specific nasal puritan swab testing that she objected to. And therefore, it wasn't an exception to the mootness doctrine under the capable of repetition generating review process. Let me also ask you, the fact that she did not take an affirmative step to re-enroll for 2022, I think it's the year, does that also weigh against her? Oh, yes. Actually, I think when you get to the mootness issue, to me, the first step of the mootness issue is that because Ms. Corrigan is not a student at BU and hasn't been since the first semester of 2021, the entire case is moot. She's not subject to testing at all because she's not a student at BU. And that ground alone mooted the case, separate and apart from whether or not the mandatory testing ceased in March of 2022. Okay. Thank you, counsel. Any questions for my colleagues? No. Okay. Let's hear a rebuttal. Mr. Meltzer. If I may, the motion to dismiss was brought under 12B-6 and 12B-1. Our motion for reconsideration focused on 12B-6. Once you take a document and you begin interpreting and doing it. Judge Casper, in the footnote, just go ahead. Well, Judge Casper in the footnote, footnote one of her opinion, she said, I'm only considering under 12B-1. So the dismissal, she never went under 12B-6. That's why we filed the reconsideration, which she denied. Because what she did do, whether she calls it 12B-1 or not, it's a 12B-6 decision. In fact, it's a Rule 56 decision. What we've mostly heard and what you've heard today and what she heard is testimony from counsel, not anything in the record verified. These documents were not properly before the court. They were not verified. There was no affidavits. The court should not have considered them at all. Nor should the court be hearing testimony from court about what happened or what should have happened. These are discovery issues. There's nothing in this appendix by which they terminated her scholarship that told her that she wasn't coming back. There's a very specific letter suspending her, but nothing that terminates and says you are now not a BU student. These are all questions of fact. These are things that get determined by discovery. And if the court's going to rely on documents, it's a Rule 56 decision. But here, specifically what she did is she took a document and she weighed the evidence. If it was with an affidavit, if it had some other basis for it that we all agreed on, I can see that. But still, this is the document that was provided by BU saying testing will continue. And here I am hearing an argument that, well, this can't be relied on. Well, it was provided by them. And there's no indication in this record that the termination of this program ever occurred, and there's no indication that she ever had her suspension terminated and her scholarship suspended. Do you have any allegation below, for the purpose of 12B6, allegation that she affirmatively tried to re-enroll or try to get that suspension eliminated or did anything? Because I don't see any such allegation. We filed a suit, Your Honor, because they would not take her back unless she complied. We're not required to take that hurdle. They did not terminate her when time went by. We do not believe there's an affirmative obligation, and I don't know where that would come from. Again, I'm hearing this from Boston University. I feel like I'm litigating against testimony of counsel. This is why we take depositions. Okay. Judge Selle, you had a question. Sorry, Judge. No, I'm good. Okay. Anything else? I know we took most of your rebuttal. You have 30 seconds. You want to say anything else? If not. I do. In a suggestive state, we believe under de novo review, there was nothing before the record that gave the underlying court the right to dismiss this case. It was based upon unverified documents that were weighed. My client needs to get back to school. She needs to be put back in the situation she's in. It's a live controversy because all of the elements of our complaint can still be awarded to her. And if, in fact, on summary judgment after discovery, the court concludes otherwise, that's a different issue. But at this point, she's entitled to get back to school where she belongs. Thank you. Okay. Thank you, counsel.